EL PUEBLO, DEMANDANTE Y APELADO, *v.* PORTO RICAN AMERICAN
TOBACCO COMPANY, ACUSADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan,
Primer Distrito, en causa por infracción a las secciones
6 y 8 de la Ley sobre Contrato de Trabajo.

No. 1845.—Resuelto en junio 13, 1922.

CONTRATO DE TRABAJO—SALARIO DE OBREROS—DESCUENTOS HECHOS POR EL PA-
TRONO—DENUNCIA INSUFICIENTE.—Como la prohibición contenida en la sec-
ción 6 de la Ley sobre Contrato de Trabajo, aprobada en marzo 31, 1919,
al efecto de que ningún patrono podrá descontar por ningún motivo parte
del salario que devenguen los obreros para ser pagada a otras personas,
salvo en el caso de anticipo hecho en moneda legal, es absoluta, no es nece-
sario alegar en una acusación bajo dicha sección 6 que el descuento se hizo
contra la voluntad del obrero. Basta que se demuestre un descuento sin
previo anticipo en moneda legal, para que se entienda cometido el delito de-
finido en la sección 6.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. L. Muñoz Morales.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del
tribunal.

La acusación origen de esta causa, en lo pertinente, dice
así:

"El fiscal formula acusación contra la corporación Porto Rican
American Tobacco Company por un delito definido por la sección
6 y castigado por la sección 8 de una ley titulada 'Ley sobre con-
trato de trabajo,' aprobada por la Asamblea Legislativa de Puerto
Rico, en 31 de marzo de 1919, *misdemeanor* cometida de la manera
siguiente:

"Que en uno de los días del mes de diciembre de 1919 y en
San Juan, que forma parte del distrito judicial del mismo nombre,
la corporación acusada, Porto Rican American Tobacco Company,
que se aprovecha del trabajo de Agustina Corchado, mediante el
pago a ésta de un salario semanal, y sin haberle hecho anticipo al-
guno, le descontó la suma de veinte y cinco centavos, parte del
salario semanal devengado por ésta, para ser pagado a otras per-
sonas."

Celebrado el juicio, la corte declaró culpable a la acu-

sada imponiéndole cien dólares de multa, y contra su sentencia se interpuso el presente recurso de apelación. Examinaremos los errores en el orden en que han sido señalados.

1. Sostiene la apelante que la acusación no expresa hechos suficientes para constituir la infracción imputada. A su juicio debió alegarse en ella que el pago se hizo contra la voluntad de la supuesta perjudicada. Veamos la ley. Las secciones 1 y 6, que son las pertinentes, dicen:

"Sección 1.—En todo contrato celebrado con obreros se pagarán los salarios de éstos, exclusivamente en moneda legal de los Estados Unidos, y si por convenio especial, por costumbre o por cualquier otro motivo percibiere antes de la fecha regular del pago de su salario, un anticipo en metálico, será legal que el patrono descuente dicho anticipo. Si en un contrato de trabajo celebrado se estipulare que todo o parte de los salarios, se pagasen en otra forma que en metálico, será nulo tal contrato en todo lo referente a la promesa o compromiso de que se paguen los salarios en otra forma que en moneda legal de los Estados Unidos.

"Sección 6.—En el caso de que el patrono o su apoderado haga un anticipo en moneda legal de los Estados Unidos al obrero, tendrá derecho a descontar esta suma del salario de éste. Sin embargo, ninguna retención de salarios podrá exceder del total de la suma adelantada. Ningún patrono podrá descontar por ningún motivo parte del salario que devenguen los obreros para ser pagada a otras personas, salvo en los casos previstos en esta sección."

Claramente se deduce de la lectura de la ley que su propósito principal fué garantizar el salario del obrero evitando cualquier combinación que pudiera mermarlo, y así, en su sección primera, dispone que dicho salario deberá pagarse exclusivamente en moneda legal, pudiendo sólo descontarse los anticipos *en metálico* que se hubieren hecho y siendo nula cualquier estipulación que pueda acordarse en relación con el pago en cualquier otra forma que no sea en dinero.

En la sección sexta vuelve el legislador sobre la cuestión de los anticipos que se hagan *al obrero* y de modo terminante prescribe que "Ningún patrono podrá descontar por

*ningún motivo* parte del salario que devenguen los obreros *para ser pagada a otras personas,* salvo en los casos previstos en esta sección.'' La prohibición es absoluta. Sólo cabe descontar cuando se ha hecho un anticipo al obrero. Si se descuenta en cualquier otra forma o por cualquier otro motivo, se incurre en la infracción de la ley que está castigada como delito menos grave por la sección octava de la misma. El pago debe ser hecho al obrero y con él liquidarse el anticipo si se le hizo alguno. No se puede descontar para pagar a otras personas, no importa lo bueno de los motivos que se tengan para ello.

Siendo esto así, no era necesario alegar en la acusación que el descuento se había hecho contra la voluntad del obrero. Se hizo en contra de lo dispuesto en la ley y esto, que era todo lo que se necesitaba, se alegó, mediante hechos, claramente en la acusación.

2. Los otros errores señalados son: que se cometió error: (*a*) al desconocer que el descuento se hizo con el consentimiento de la supuesta perjudicada; (*b*) al desconocer que los descuentos verificados no eran para entregarse a otras personas, sino para beneficio de los propios obreros; (*c*) al no reconocer la existencia de las organizaciones obreras en los talleres de la corporación acusada; (*d*) al desconocer que las comisiones designadas por los obreros tenían autoridad para acordar descuentos, y (*e*) al apreciar en conjunto la prueba y al hacer ciertas manifestaciones que denotan parcialidad o prejuicio.

Veamos el resultado de la prueba. Agustina Corchado, la obrera a que se refiere la denuncia, declaró, en resumen, que trabajaba como despalilladora en la fábrica de tabaco de la acusada, ganando nueve pesos semanales; que no tomó dinero anticipado y eso no obstante cada semana se le descontaban cincuenta centavos; que no había autorizado en forma alguna el descuento y que protestó ante la oficina con-

testándosele que había orden de una federación obrera de descontar a cada miembro de la fábrica cincuenta o cuarenta y cinco centavos; que según las comisiones obreras expresaban, el dinero descontado era para una cooperativa, para alguna viuda, etc.; que las cantidades descontadas se pagaban a los representantes de las comisiones; que las comisiones las nombraba la mayoría de los salones y las operarias desde el momento que había mayoría, tenían que aceptarlas.

Augusto de Chabert, testigo de la acusada, declaró que era pagador de la misma, y admitió que se hacían descuentos así:

"Que venía la comisión del taller y le exponía a las despalilladoras el motivo que creían que había por el cual debían hacer el descuento y después de ellos explicarles se sometía a votación y levantaban la mano o se ponían de pie, y si resultaba mayoría en la votación se hacía el descuento y entonces ellos mismos autorizaban a la comisión del taller para que fueran a la oficina a informar qué descuento se había de hacer en la semana aquella y para que fin y entonces el jefe de la oficina o el *manager* del departamento se lo comunicaba a él (el testigo) y él les decía a ellos los empleados si debían hacer o no el descuento; de modo que ese descuento se hacía por el acuerdo de la asamblea de los mismos trabajadores; que había algunos que decían que ellos no estaban conformes con que se les descontase, pero se lo decían a él y él les decía que fuesen a la oficina a quejarse, porque él al taller solamente iba a pagar, no a recibir quejas, pero que la oficina sí estaba autorizada a recibir quejas."

Siguió declarando ampliamente el testigo y contestando al fiscal se expresó, en parte, así:

"Que el día que se fué Agustina Corchado que hubo el escándalo en el taller protestó ante el taller, no ante él; que él le dijo que ya el dinero estaba pagado y no podía devolverlo; que si antes de hacerse el pago ellas venían a protestar se le comunicaba a la comisión y si lo autorizaba se le devolvía el dinero, de modo que había inteligencia previa entre la comisión y las despalilladoras, y ellos pasaban por el acuerdo de la comisión."

Y contestando, por último, al juez, expuso, en parte:

"Que ellas hacían la reclamación y entonces ellos llamaban a la comisión para que ella tuviera conocimiento de que se le iba a devolver el dinero si lo autorizaba antes de haberse hecho el pago, de modo que si la comisión se oponía a que devolviera el dinero la compañía no lo devolvía porque ya había sido autorizado en el taller; que en cuanto a descuento el verdadero jefe era la comisión, porque una vez hecho el descuento ya se consideraba que pertenecía a la comisión puesto que antes de haberse hecho el *pay roll* el taller lo había autorizado."

Introdujo la acusada como prueba cuatro recibos, de los cuales transcribiremos el primero. Los otros son de la misma naturaleza:

"Recibí de la Porto Rican American Tobacco Co. of P. R., *Gen. Stemmery Dept.* la cantidad de $89.90 rebajados de los jornales de los trabajadores durante la semana de diciembre 12 a 18, 1919, por fines cooperativos de la Federación Libre como sigue:

| "115 Trabajadores, | a | 25 c._____ | $28.65 |
|---|---|---|---|
| 1 Lector, | a | 25 c._____ | .25 |
| 36 Capoteras y trabajadores, | a | 10 c._____ | 4.60 |
| 563 Despalilladoras, | a | 25 c._____ | 36.30 |
| Total_____ | | | $89.90" |

Prudencio Rivera Martínez, organizador de la Unión Internacional de Tabaqueros, en parte, dijo así:

"Los talleres tenían una organización democrática, regían las comisiones y cuando llega allí alguna viuda o algún agente de la Cruz Roja o cualquier petición, se somete a la mayoría y si lo acepta la mayoría, se comunica a los jefes de la compañía para que se dé el dinero. A veces muere un tabaquero sin protección y se levanta un trabajador en el taller y propone el descuento de alguna cantidad, van a hablar con el *manager,* se lo comunican, éste lo anticipa y luego lo descuentan de los sobres de pago; de modo que esos descuentos se hacían a virtud de esos acuerdos."

Declarando el testigo se presentó como prueba la cláusula 7 de cierto reglamento aprobado en 1917 que estaba vigente,

según él, cuando ocurrieron los hechos de este caso. Dice así:

"La Oficina General deducirá semanalmente del jornal de cada tabaquero que gane más de $2.50 semanales la suma de quince centavos, acordada por ellos mismos para el sostenimiento de sus enfermos y esta suma será entregada por el Tesorero de la compañía al *manager* de la fábrica, quien a su vez la entregará a la persona o personas que los torcedores designaren."

Finalmente declararon los testigos Florentino Miranda y Arturo H. Noble. Ambos se refirieron a los reglamentos de los obreros. Noble, en parte, expresó:

"Que en tal carácter está enterado de ciertos descuentos que se han hecho a los trabajadores, y que esos descuentos se hacían en todos los talleres en toda la isla por virtud de acuerdos entre las organizaciones obreras y la compañía; que esos acuerdos estaban vigentes en el año 1919 y continuaron vigentes hasta fines del 1920; que en la actualidad no están vigentes por virtud de que los trabajadores que están actualmente trabajando no están unionados; que en aquella época existían las uniones o gremios de los talleres; que ellos siempre se entendían con las comisiones que cada taller nombraba y nunca personalmente con ninguno de los operarios, no desde 1914, porque entonces parece que no estaban organizados; tenían esas organizaciones pero no perfectamente funcionando; que la compañía tuvo conocimiento de esas organizaciones por virtud de huelgas qué había y las comisiones que eran las que representaban al obrero intervenían; que esos descuentos se hacían sin distinción ninguna a todos los operarios."

La parte que dejamos expuesta de la prueba es la esencial, a nuestro juicio, y pone de manifiesto la verdad de lo ocurrido. Es indudable que las uniones obreras comprendían, durante el tiempo en que ocurrieron los hechos que dieron origen a esta causa, a casi todos los trabajadores de la fábrica, pero nada hay en la prueba que demuestre que Agustina Corchado perteneciera a alguna unión. Ella lo niega. Ella afirma que jamás autorizó descuento alguno y que protestó del que se le hizo.

Para casos como el de ella y para otros semejantes fué que se ideó la ley infringida por la corporación acusada. Cada trabajador es dueño de y debe recibir todo lo que gana sin estar sujeto a extrañas presiones que lo obliguen a ceder parte de su jornal involuntariamente, y para que este propósito pudiera cumplirse y la ley no resultara ilusoria, la prohibición impuesta por la misma tenía que ser como fué general, absoluta. El pago debe hacerse al obrero y con él liquidarse el descuento de lo que en metálico se le hubiere adelantado. Si el trabajador por su propio acuerdo, a virtud de un estudio reflexivo de los bienes que de ello podría derivar o de las buenas obras que para con sus compañeros con ello podrían realizarse, quiere desprenderse de parte del producto de su trabajo y entregarlo a determinada persona, asociación o unión, no hay poder alguno que se lo impida. Pero debe hacerlo él personalmente. Ese es el estado actual de nuestra legislación sobre la materia.

Lo expuesto resuelve en sentido negativo los cuatro primeros errores agrupados bajo el número 2. Resta sólo considerar el último. Dijo la corte en su sentencia:

"Por virtud de esta prueba la corte dictó sentencia declarando a la compañía culpable del delito imputádole y le impuso la pena de $100 de multa en cada caso, manifestando que en estos casos ha sido benigna pero que si trajese el fiscal otro caso de esta índole después de haberse dictado ya una sentencia, le impondría una pena de cárcel en el grado máximun que le permita la ley. La defensa hizo constar su protesta contra esta manifestación de la corte porque implica prejuzgar cualquier caso que pueda traerse ante su consideración."

No creemos que constituya error la manifestación de la corte. Fué en verdad exagerada, pero quizá resultó beneficiosa para la misma acusada y para el debido cumplimiento de la ley. De todos modos, se refería a actuaciones futuras que están por ahora fuera de nuestro alcance.

Debe confirmarse la sentencia recurrida.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf, Aldrey y Hutchison.*