EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* THE PORTO RICO TELEPHONE Co., acusada y apelante.

No. 3928.—*Sometido:* Diciembre 19; 1929. *Resuelto:* Febrero 12, 1930.

*Jaime Sifre, F. Prieto* y *Diego O. Marrero,* abogados de la apelante;
*R. A. Gómez,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

La acusación en este caso está redactada así:

"El fiscal formula acusación contra la corporación 'The Porto Rico Telephone Company' por un delito definido por la sección 6 y castigado por la sección 8 de una ley titulada 'Ley sobre contratos de trabajo,' aprobada por la Asamblea Legislativa de Puerto Rico en 31 de marzo de 1919 (*misdemeanor*), cometido de la manera siguiente:

" ' 'Que en uno de los días del mes de febrero de 1928, y en San Juan, P. R., que forma parte del distrito judicial del mismo nombre, la corporación acusada, Porto Rico Telephone Company, que allí y entonces se aprovechaba del trabajo de Angel Irizarry, mediante el pago a éste de un salario quincenal, y sin haber hecho anticipo alguno le descontó la suma de dos dólares ochenta centavos, parte del salario quincenal devengado por éste, para ser pagado a otras personas.

" 'Este hecho es contrario a la ley para tal caso prevista y a la paz y dignidad de "El Pueblo de Puerto Rico." ' "

La acusada presentó excepción perentoria fundada en dos extremos; declaró la corte sin lugar la excepción; y oído el caso, declaró a la acusada culpable de infracción de la sec-

ción 6 de la ley No. 91 de 31 de marzo de 1919 (Leyes de 1917 (3) p. 11), sobre contrato de trabajo, y la condenó a pagar $25 de multa. Y de esta sentencia ha apelado la acusada.

En el alegato en apelación se señalan varios errores, que examinaremos.

■ Veamos el primer señalamiento de error.

"I.—La corte de distrito cometió error al declarar sin lugar la excepción perentoria formulada por la acusada-apelante en oposición a la acusación."

El primer fundamento es que en la acusación no se aducen hechos que constituyan delito.

La apelante sostiene:

(a) Que no se ha aducido un contrato de trabajo.

(b) Que no se alega que Irizarry fuera un obrero al servicio de la acusada.

Podría contestarse la argumentación de este error con las palabras del juez de distrito al resolver la excepción.

"La acusación establece 'Que la acusada se aprovechaba del trabajo de Angel Irizarry, mediante el pago a éste de un salario quincenal y que sin haberle hecho anticipo alguno, le descontó una suma de dinero, parte de su salario quincenal, para pagarlo a otras personas.' De estos hechos surge clara, expresa, suficiente, la relación contractual entre Irizarry y la acusada, esto es, el obrero y el patrono; la circunstancia de no haberle hecho anticipo alguno y la de haberle descontado una parte de su salario. Esto es suficiente. . ."

La prestación del trabajo para otro, que le aprovecha, y la del salario por parte de este último, son los elementos de esencia en esta clase de contratos. El obrero trabaja y rinde el beneficio del trabajo, causa contractual que determina una prestación por parte del patrono, que es el pago del salario, prestación que a su vez es causa que determina al obrero. La relación es claramente contractual, y no puede ser de otra clase; son mutuas prestaciones, que generan al mismo tiempo obligaciones y derechos en cada una de las partes; y

si unas y otras se hallan regidas por la ley, es indudable que las relaciones por ellos creadas caen en la esfera del contrato.

No es necesario que en la acusación se diga "existía tal o cual contrato"; basta que (como ocurre aquí) los hechos hagan surgir el concepto jurídico del contrato, para que desde ese punto de vista, la acusación no sea tachable. No es el nombre, ni es la repetición de palabras, lo que da vida a la acusación. En todas las jurisdicciones, es la más ferviente aspiración la de que el formulismo exagerado no se convierta en escudo y amparo del transgresor de la ley.

La acusación en este caso sigue sustancialmente la expresión de la que se presentó en el caso *El Pueblo de Puerto Rico* v. *Porto Rican American Tobacco Company,* de que entendió en apelación este tribunal (véase 30 D.P.R. 795). No quiere esto decir que sea ésa la única y consagrada fórmula; pero sí que es correcta por contener los elementos necesarios para imputar un delito.

■ Se argumenta por la apelante que en la acusación no se dice que Irizarry fuera un obrero al servicio de la acusada. Pero si se ha alegado que ésta aprovechaba *el trabajo* de Irizarry, y le pagaba *un salario,* no vemos la necesidad de emplear precisamente la palabra "obrero," ya que el concepto está determinado de una manera indudable.

■ En cuanto al segundo fundamento, se argumenta con gran acopio de jurisprudencia, que la ley es anticonstitucional y nula, por ser contraria a lo dispuesto por el acta orgánica de Puerto Rico en su sección 34, y se sostiene que la Ley No. 91, fundamental en el caso, es anticonstitucional en la parte que fija una penalidad, de la que no se habla en el título.

Entendemos que la mejor autoridad en esta materia se halla en las decisiones citadas en el alegato del apelado en este caso. Son los casos *Carter County* v. *Sinton,* 120 U.S. 522, *Jonesboro City* v. *Cairo & St. Louis Railroad,* 110 U.S. 198, y *Luisiana* v. *Pilsbury,* 105 U.S. 288. En este último se

lee lo que sigue, con referencia al precepto que establece, en gran número de Constituciones de Estado, que las leyes deben comprender una sola materia, y ésta debe ser expresada en el título:

"Su objeto es impedir la práctica, corriente en todos los cuerpos legislativos en que tal provisión no existe, de incorporar en el mismo proyecto de ley materias incongruentes, sin relación entre sí o con el objeto especificado en el título, a virtud de la cual frecuentemente se adoptasen, sin llamar la atención, medidas que de haber sido conocidas, hubieran tenido oposición, y sido derrotadas. Esto sirve así para evitar sorpresas en la legislación. Pero no fué el propósito prohibir la unión en el mismo proyecto, de diferentes disposiciones si ellas son germanas con la materia general indicada en el título. . ."

En nuestra jurisprudencia encontramos los casos *Rodríguez* v. *Porto Rico Railway, Light & Power Co.,* 30 D.P.R. 931, y *Roig Torrellas* v. *Juan G. Gallardo,* Tesorero, 39 D. P.R. 808, resuelto en 26 de junio de 1929. En este último se citan las decisiones en *El Pueblo* v. *Arrocho,* 34 D.P.R. 847, y *Trigo* v. *Banco Territorial,* 36 D.P.R. 275.

En el caso *Rodríguez* v. *Porto Rico Railway,* etc., *supra,* se dijo:

"Este título asimismo describe claramente el propósito. El objeto de la ley es enmendar artículos de ley que se supone están en vigor, y el cuerpo principal de la ley no tiene por fin comprender ninguna otra cosa que no sean dichos artículos enmendados. No encontramos en los casos citados por la apelada ninguna decisión que indique que alguna ley sea anticonstitucional o nula por razón de un título semejante. Las decisiones tienden más bien a declarar que cuando se incorporan en la ley cosas que el título no sugiere, entonces la ley es nula. Galpin v. Chicago, L.R.A. 1917 B, página 182, donde se cita a Lyons v. Police Pension Board, 99 N. E. 337, y nuestro examen de ese caso es que la ley fué declarada nula debido a su contenido más bien que por razón de su título."

En la decisión en *El Pueblo* v. *Arrocho, supra,* se cita de 25 Ruling Case Law 844, lo siguiente:

"Una ley no es anticonstitucional porque contenga más de una

materia cuando las distintas materias son afines al asunto principal, o se relacionan directa o indirectamente con el asunto principal, y tienen una relación mutua con el asunto de la ley, sin ser extrañas a la misma, o cuando las disposiciones de la ley son de igual naturaleza y legítimamente caen bajo el mismo tópico. 25 R.C.L. 844.''

La sanción penal incluída en una ley que regula el contrato de trabajo, y que establece preceptos de carácter prohibitivo, que indiscutiblemente requieren aquella sanción, no puede anular la ley, parcial o totalmente.

La cláusula de sanción en la ley de que se trata, ni está en conflicto con la letra y el espíritu de la ley misma, ni puede tenerse por materia distinta de la enunciada en el título, sino necesaria.

■ El segundo error se enuncia así por la apelante:

''La corte de distrito cometió manifiesto error al resolver que la evidencia aportada por el ministerio público constituyó prueba suficiente para sostener la culpabilidad de la acusada dentro de las disposiciones de la sección 6, en relación con la sección 8, de la Ley No. 91 sobre contratos de trabajo, promulgada en 31 de marzo de 1919 por virtud de sentencia de esta Hon. Corte del día 11 de dicho mes y año.''

Todo el argumento que hábilmente se presenta por la ilustrada representación profesional de la apelante, encuentra su contestación en la ley y en la jurisprudencia. Dice la primera:

''. . . Ningún patrono podrá descontar por ningún motivo parte del salario que devenguen los obreros para ser pagado a otras personas, salvo en los casos previstos en esta sección.'' Sección 6, Ley 91 citada.

Y ha sostenido la jurisprudencia:

''Claramente se deduce de la lectura de la ley que su propósito principal fué garantizar el salario del obrero evitando cualquier combinación que pudiera mermarlo, y así, en su sección primera, dispone que dicho salario deberá pagarse exclusivamente en moneda legal, pudiendo sólo descontarse los anticipos *en metálico* que se hubieren hecho y siendo nula cualquier estipulación que pueda acor-

darse en relación con el pago en cualquier otra forma que no sea en dinero.

"En la sección sexta vuelve el legislador sobre la cuestión de los anticipos que se hagan *al obrero* y de modo terminante prescribe que 'Ningún patrono podrá descontar por *ningún motivo* parte del salario que devenguen los obreros *para ser pagada a otras personas,* salvo en los casos previstos en esta sección.' La prohibición es absoluta. Sólo cabe descontar cuando se ha hecho un anticipo al obrero. Si se descuenta en cualquier otra forma o por cualquier otro motivo, se incurre en la infracción de la ley que está castigada como delito menos grave por la sección octava de la misma. El pago debe ser hecho al obrero y con él liquidarse el anticipo si se le hizo alguno. No se puede descontar para pagar a otras personas, no importa lo bueno de los motivos que se tengan para ello." El Pueblo v. Porto Rican American Tobacco Co., 30 D.P.R. 795.

El reglamento que en este caso se presentó como prueba, sería, por sí sola, bastante para justificar a la corte de distrito en su sentencia. Es un hecho que la parte del salario que se descuenta va, en parte a otras personas. · Y en cuanto a la voluntad de los asalariados para que el descuento se haga, hay en la prueba en el caso una afirmación que es más fuerte que cualquier argumento. Declarando el testigo Angel Irizarry, se le preguntó si el descuento o depósito del 2 por ciento de su sueldo se hacía con su consentimiento; y el testigo contestó así:

"R.—Yo no consentí a nada. Me lo rebajaban.
"P.—¿Pero no protestó Ud.?
· "R.—No protesté porque me botaban."

De la lectura del reglamento, que fué prueba en el caso, aparece que la contribución para el mantenimiento del fondo era obligatoria (Pág. 20, transcripción de evidencia).

Conviene copiar aquí el artículo V del reglamento que fué prueba en el caso.

"Artículo V.—Todos los empleados contribuirán al mantenimiento del Fondo con el 2% de su salario anual, cuya cantidad les será descontada al efectuarse el pago del mismo, en la forma establecida."

Resuelve este razonamiento cuanto se refiere al segundo señalamiento de error. La corte procedió dentro de la ley y de la buena lógica.

█ Se ofrece por la apelante un tercer señalamiento de error, como sigue:

"La corte de distrito cometió manifiesto error al dictar una sentencia contraria a derecho, toda vez que no aparece claramente, ni en ninguna otra forma expresada en la Ley No. 91, sobre contratos de trabajo, prohibición alguna que impida a la acusada de mantener con sus empleados una asociación como el fondo benéfico y de retiro; siendo también dicha sentencia contraria al artículo 2 de nuestra Ley Orgánica y a la enmienda 14 de la Constitución de los Estados Unidos."

No hay tal error.

No se trata en este caso de una voluntaria y libre asociación para el ahorro, y para el beneficio de los empleados, obreros y dependientes de la corporación. La voluntad de ellos para nada cuenta, ni resuelve o determina. Son asociados forzosos, y no libres contratantes. Y a nuestro modo de ver ése es uno de los casos que ha querido prever, impedir, y, en su caso, castigar, la ley de que se trata. Recuérdese, en esta oportunidad, lo dicho por este tribunal en el caso *El Pueblo* v. *P. R. American Tobacco Co.,* que en otro lugar en esta opinión, hemos citado:

"Claramente se deduce de la lectura de la ley que su propósito principal fué garantizar el salario del obrero evitando cualquier combinación que pudiera mermarlo. . ."

Es verdad que la Constitución de los Estados Unidos, y nuestra Carta Orgánica impiden que se ponga en vigor ley alguna que menoscabe la libertad de los contratos. Pero en este caso no hay un contrato entre el obrero y la corporación; hay una verdadera imposición; el que recibe el salario tiene que pasar porque se le haga el descuento; ése es el verdadero concepto.

En el alegato de El Pueblo de Puerto Rico se hacen importantísimas citas de autoridades; pero entre ellas la que

es más propia de este momento es la decisión en el caso *Baltimore and Ohio S. W. R. Co.* v. *Baily,* 99 Ohio 312, 124 N.E. 195, en el que la corte dijo:

"El hincapié que hace la corte en P., C., & St. L. Ry. Co. v. Cox, supra, en el hecho de que el contrato del empleado de la demandante en dicho caso fué celebrado voluntariamente con el pleno conocimiento de la naturaleza y efecto del contrato en que estaba interviniendo, levanta una inferencia clara de que la conclusión enunciada iba tan lejos como la corte creyó que estaba justificada en ir al resolver el caso que tenía bajo su consideración. En dicho caso no se aplicó ninguna ley retroactiva o *ex post facto,* ni ninguna adjudicación.

"Además, aun si se hubiese permitido a una asociación benéfica no voluntaria llevar a cabo sus operaciones con anterioridad a la aprobación de estos estatutos, ello no justificaría su continuación con posterioridad a tal aprobación, ni haría que los estatutos fueran nulos e ineficaces respecto a tal asociación. ·Contratos y convenios de la naturaleza de los aquí envueltos, hechos por tales asociaciones, que caen dentro de la prohibición de estatutos aprobados posteriormente por la asamblea legislativa en el ejercicio de su poder de policía, serían ineficaces a virtud de los mismos. L. & N. R. Co. v. Mottley, 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R.A. (N. S.) 671, y P. B. & W. R. Co. v. Schubert, 224 U. S. 603, 32 Sup. Ct. 589, 56 L. Ed. 911."

No existe ninguno de los errores señalados por la apelante. *Debe confirmarse la sentencia apelada.*

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SEÑOR WOLF

El motivo de mi disentimiento es que el título de la ley, según fué aprobada por la Legislatura, no indicaba que la acusada pudiese estar sujeta a sanción penal si en beneficio o en supuesto beneficio de sus empleados retenía parte de sus salarios. La acusación imputaba a la acusada el haber descontado cierta suma de dinero a determinado empleado para pagarla a otras personas. Necesariamente, si la acusada hubiese sabido que una ley conteniendo tal sanción iba a ser aprobada, tal vez habría insistido ante la Legislatura sobre lo poco aconsejable que era la aprobación de la ley.

Según dicen las decisiones, el título de una ley debe ser un anuncio de su contenido. El título era "Ley sobre contratos de trabajo." El campo de los contratos de trabajo es muy amplio y parece altamente improbable, si no imposible, que cualquier patrono tuviera conocimiento directo o implícito de que la Legislatura se disponía a prohibir que se descontara una cuota de los sueldos, y, por consiguiente, que se acumulara un fondo en beneficio de los empleados.

Tenemos ante nosotros un caso en que el patrono, nominalmente por lo menos, está tratando de cuidar de sus empleados. Quizá una mayoría—de no ser una gran mayoría—de éstos estarían dispuestos a que se creara el fondo, y a todos ellos debió habérseles hecho alguna indicación del propósito legislativo. En verdad, "contratos de trabajo" muy remotamente, si acaso, se refiere al descuento en cuestión. Los contratos del trabajo por lo general tienen distinta connotación.

Tal vez sea parte del mismo tema, pero dudo además que la ley, en relación con su título, sea una definición o denunciación suficiente del *malum prohibitum*.

Ésta es una ley que en 1917 el Gobernador Yager no aprobó. Fué la opinión del Gobernador o del Procurador General que el proyecto nunca se convirtió en ley; que había sido objeto de un *pocket veto*. Por una decisión de la mayoría de este tribunal, disintiendo el que suscribe, un proyecto no aprobado en igual forma fué declarado ley. *Municipio de Quebradillas* v. *Secretario Ejecutivo,* 27 D.P.R. 147. Todas las leyes que hubo la intención de vedar fueron posteriormente publicadas en un folleto con la siguiente inscripción en la carátula: "Conteniendo copias certificadas de los originales de ciertas leyes y resoluciones promulgadas y publicadas en virtud de una resolución del Tribunal Supremo de Puerto Rico de fecha 11 de marzo de 1919." Ahora bien, aunque he tomado parte sin disentimiento posterior en varios casos, sin embargo, me refiero a mi disensión anterior

por dos motivos. Desde que se escribió la opinión de este tribunal, la Corte Suprema de los Estados Unidos, en *The Pocket Veto Case,* 279 U. S. 655, ha demostrado, a mi modo de pensar, que estos proyectos, si no está envuelto ningún principio de *stare decisis,* jamás se convirtieron en leyes. En el caso nacional, la devolución del proyecto fué impedida por el receso que hubo entre una sesión y otra. En el caso local, el receso fué de 70 días. En ambos casos se impidió la devolución. Mi otro fundamento es que aun podría suponerse que el Gobernador, aconsejado por su Procurador General, trató de derrotar este proyecto quizá entre otras razones debido a la insuficiencia del título. Mi vacilación al exponer estas dudas se debe al tiempo transcurrido desde que esas leyes fueron promulgadas y al hecho de que la apelante no se ha quejado de la nulidad por este motivo.

Por la insuficiencia del título como un defecto fundamental, me abstengo de considerar los otros errores señalados.