JUAN GARCÍA CINTRÓN, demandante y apelado, *v.* MUNICIPIO DE HUMACAO, demandado y apelante.

Núm. 7471.—*Sometido:* Febrero 7, 1940. *Resuelto:* Octubre 24, 1940.

*Burset & Pérez Pimentel,* abogados del apelante; *Arturo Aponte* y *R. García Cintrón,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

La corte de distrito declaró inconstitucional una enmienda al artículo 553 del Código Penal y una ordenanza municipal aprobada bajo la autoridad de ese artículo, tal cual fué enmendado.

■ Con anterioridad a la enmienda en cuestión (Código Penal, edición de 1937) el artículo, tal cual fué enmendado en 1917 (Leyes de ese año, vol. II, pág. 273), disponía:

"Artículo 553.—Los domingos durante todo el día; los días de fiestas legales desde las 12 A. M., excepto el Labor Day, o sea el primer lunes del mes de septiembre, y el día 4 de julio, que permanecerán cerrados todo el día; todos los sábados desde las 9 P. M.; todos los días laborables desde las 6 P. M., y los días 24 y 31 de diciembre y 5 de enero de cada año desde las 10 P. M., permanecerán cerrados al público y una hora después de cerrados no se permitirá ninguna clase de trabajo para los empleados, en los establecimientos comerciales e industriales, con excepción de los designados a continuación:

"I.—Las bibliotecas, fábricas de azúcar y alcohol, tahonas de café, farmacias, solamente en cuanto al despacho de recetas y medicinas al detall.

"II.—Los mercados públicos, imprentas, garages y panaderías; *Disponiéndose,* que ningún establecimiento abierto en los mercados públicos para la venta de provisiones y mercancías estará exento del cumplimiento de esta ley."

Según fué enmendado en 1925 (Leyes de ese año, pág. 137) y conforme regía al iniciarse el pleito, el artículo lee así:

"Artículo 553.—Los domingos, durante todo el día; excepto cuando fueren domingos los días 24 de diciembre, y primero y 5 de enero; el primer lunes de septiembre (Labor Day), y el día 4 de julio; los días de fiesta legal desde las 12 a. m.; todos los sábados desde las 9 p. m.; todos los días laborables desde las 6 p. m., y los días 24 y 31 de diciembre y 5 de enero de cada año, desde las 10 p. m., permanecerán cerrados al público; y una hora después de cerrados, no se permitirá ninguna clase de trabajo para los empleados en los

establecimientos comerciales e industriales, con excepción de los designados a continuación:

"

"8.—Los establecimientos de farmacias, el cierre de los cuales será regulado por ordenanzas de las asambleas municipales; *Disponiéndose*, que en ningún caso podrán los municipios ordenar el cierre de los establecimientos de farmacias dentro de las horas de las 7 a. m. y las 6 p. m., durante los días laborables."

El párrafo octavo del artículo 34 de nuestra Carta Orgánica provee:

"No se aprobará ningún proyecto de Ley, con excepción de los de presupuesto general, que contenga más de un asunto, el cual deberá ser claramente expresado en su título; pero si algún asunto que no esté expresado en el título fuere incluído en cualquier ley, esa ley será nula solamente en aquella parte de ella que no haya sido expresada en el título."

La ley de 1925 tenía por título: "Ley para enmendar el artículo 553 del Código Penal, y para otros fines."

Desde 1917 al 1925 las farmacias fueron incluídas excepto en lo que se refería "al despacho de recetas y medicinas al detall."

Por la enmienda se excluyó a las farmacias pero se otorgó a los municipios un poder limitado de reglamentación. La teoría de la corte de distrito fué que el fin legislativo de conferir tal autoridad a los municipios no estuvo claramente expresado en el título de la ley. Éste, desde luego, quizá pudo ser más específico. La delegación de autoridad legislativa, sin embargo, fué tan sólo parte de los asuntos, según indica su título. Por lo menos no era "tan extraña al título" que sea inconstitucional. Véanse: *Pueblo* v. *P. R. Telephone Co.,* 40 D.P.R. 566; 25 R.C.L. 530, sec. 116; Nota al caso de *Lewis* v. *Dunne,* en 55 L.R.A. 833, 842; *Carter County* v. *Sinton,* 120 U. S. 517, 522; *Blair* v. *Chicago,* 201 U. S. 400, 451; *Posados* v. *Warner, B. & Co.,* 279 U. S. 340, 344; 25 R.C.L. 505, sec. 88 y siguientes; *Gallardo* v. *P.R. Ry. Light & Power Co.,* 18 F. (2d) 918; *Vidal* v. *Fernández,* 104 F. (2d) 606; y Cooley Constitutional Limitations (sexta ed.) 172.

 La ordenanza requería que todas las farmacias dentro del Municipio de Humacao permanecieran abi'ertas en determinados días festivos desde las 7 a.m. hasta las 12 y todos los demás días desde las 7 a.m. hasta las 6 p.m. Autorizaba la venta de medicinas 'en casos de emergencia después de las 11 de la noche. Disponía que durante todos los días festivos no numerados 'en su primera sección, todas las farmacias permanecerían cerradas desde la 1 de la tarde hasta las 7 a.m. del día siguiente. La víspera de Navidad y de Año Nuevo, y los sábados que cayeran en días festivos, se les p'ermitía permanecer abiertas hasta las 11 p.m. Se autorizó al Alcalde para convocar a todos los dueños de farmacias con el fin de establecer un turno semanal, para que cada una de dichas farmacias que así lo deseare pudiera permanecer abierta sin límites de los días y horas exceptuados, a condición de que se obligara a despachar toda la noche. Previa aprobación del Alcalde, tales turnos eran transferibles.

La corte de distrito también resolvió: que la Asamblea Legislativa excedió los límites de su poder de policía; que la ordenanza era irrazonable por ser perjudicial al público y a los clientes del demandante; a los derechos del demandante y a los derechos de otros farmacéuticos dentro del municipio; y que la ordenanza privaba al demandante de la igual protección de las leyes, era discriminatoria y contraria al artículo 2 de la Carta Orgánica y a la Enmienda XIV de la Constitución Federal.

La ordenanza permite once horas de trabajo por día durante cinco días por semana, dieciséis horas los sábados y cinco horas los domingos, o sea un total de 76 horas por semana. En *Bosley* v. *McLaughlin,* 236 U. S. 385, 392, la Corte Suprema de los Estados Unidos, por voz del Juez Presidente Hughes, se expresó así:

"Se desprende que un estatuto de California limita las horas de trabajo de los farmacéuticos a diez horas por día y a sesenta horas por semana (Estatutos de California, 1905, pág. 28). En vista de la naturaleza de su trabajo y de la importancia inmensa que para

el público tiene que el mismo no sea efectuado por personas que sufran de cansancio mental y físico, no hay duda alguna de la facultad que tiene el poder legislativo de limitar razonablemente las horas de trabajo de esa profesión. . . La mera cuestión de si en tales casos existe una emergencia práctica, es decir, de si tal requisito es necesario, debe ser una a determinarse por el poder legislativo y no por el judicial.''

Véanse también: *In re Twing,* 188 Cal. 261 y *M. Taboada & Cía.* v. *Rivera Martínez,* 51 D.P.R. 253.

Empero, la ordenanza que está ante nos trata de las horas del cierre y no de las horas de trabajo. Esta diferencia fué reconocida en el caso de *Patton* v. *Bellingham,* 38 P. (2d) 364, 367, en el que la Corte Suprema de Wáshington dijo:

"Los querellados sostienen que es necesario limitar las horas de trabajo de un barbero a fin de impedir el cansancio con los consiguientes riesgos y molestias para el público en general. Debe notarse que la ordenanza por sus propios términos no limita en absoluto las horas de trabajo, sino que meramente trata de limitar el tiempo durante el cual un establecimiento puede permanecer abierto. Si la barbería permanece abierta 20 horas al día, con dos turnos de 10 horas cada uno, o 24 horas al día con tres turnos de 8 horas o con 4 turnos de seis horas cada uno, entonces no se violaría reglamento alguno relacionado con las horas de trabajo."

En el caso de *Pueblo* v. *García & García,* 22 D.P.R. 817, este tribunal resolvió que el artículo 553, tal cual entonces regía, era un estatuto válido, toda vez que dejaba a discreción de los empleados trabajar 19 horas al día.

De la opinión disidente emitida por el Juez Asociado Sr. Holmes, en el caso de *Lochner* v. *New York,* 198 U. S. 45, copiamos lo siguiente:

"Este caso se resuelve a base de una teoría económica no sustentada por gran parte de la Nación. Si se tratara de la cuestión de si estoy de acuerdo con esa teoría, me gustaría continuar estudiándola ulteriormente y por mucho tiempo antes de llegar a una conclusión. Mas no concibo que ése sea mi deber, porque firmemente creo que mi concurrencia o disentimiento nada tiene que ver con el derecho de la mayoría a emitir sus opiniones. Ya ha sido resuelto por varias decisiones de este Tribunal que las constituciones y leyes

estatales pueden reglamentar la vida del ciudadano en muchas formas distintas, que nosotros como legisladores tal vez consideraríamos poco juiciosas o si se desea como tiránicas y que igualmente menoscaban la libertad de los contratos. Las leyes contrarias al trabajo dominical y las de usura son antiguos ejemplos. Un ejemplo más moderno es la prohibición de las loterías. La libertad del ciudadano a hacer cuanto le plazca siempre que no intervenga con el derecho de los demás a hacer lo mismo, cosa que ha sido un santo y seña (*shibboleth*) para algunos autores bien conocidos, es menoscabada por las leyes escolares, por las postales y por toda institución estatal y municipal que exija dinero para cualquier fin que crea prudente; ora le guste o no al ciudadano. La Enmienda XIV no establece las estáticas sociales del Sr. Herbert Spencer. En días pasados sostuvimos la ley de vacunas de Massachusetts. *Jacobson* v. *Massachusetts*, 197 U. S. 11. Los estatutos y decisiones de los Estados Unidos y estatales que menoscaban la libertad de los contratos en forma de combinaciones son conocidos por esta Corte. *Northern Securities Co.* v. *United States*, 193 U. S. 197. Hace dos años sostuvimos el precepto de la Constitución de California que prohibía la venta de acciones al margen o para entrega futura. *Otis* v. *Parker*, 187 U. S. 606. La decisión que sostiene la ley de ocho horas para los mineros es aún reciente. *Holden* v. *Hardy*, 169 U. S. 366. Algunas de esas leyes encarnan criterios o prejuicios que es posible los jueces sustenten. Algunos tal vez no. Pero el objeto no es que una constitución encarne determinada teoría política, ya sea por paternalismo y por la relación orgánica del ciudadano para con el estado, o como cuestión de *laissez faire*. Toda constitución es adoptada para aplicarse a personas de criterios fundamentalmente distintos, y la coincidencia de que hallemos que ciertas opiniones resultan naturales y conocidas o noveles o aun chocantes, no debe ser decisivo en el criterio que formemos sobre la cuestión relativa a si estatutos que la contienen están en conflicto con la Constitución de los Estados Unidos.

"Las proposiciones generales no resuelven casos concretos. La decisión dependerá de un criterio o de una intuición más sutil que cualquier premisa mayor articulada. Mas a mi juicio la proposición que acabo de enunciar, de ser aceptada, nos conduciría muy cerca del final. Toda opinión emitida tiende a convertirse en ley. Creo que el significado de la palabra 'libertad' tal cual ésta aparece en la Enmienda XIV, es tergiversado al sostenerse que ella impide el resultado natural de una opinión dominante, a menos que pueda decirse que un hombre razonable y prudente necesariamente admitiría que el estatuto en cuestión infringiría principios fundamentales tal

cual éstos han sido interpretados por las tradiciones de nuestro pueblo y por nuestra ley. No es menester hacer una investigación para demostrar que no puede censurarse tan severamente el estatuto que está ante nos. Un hombre razonable quizá podría creer que es una medida sabia para proteger la salud. Hombres que en verdad no podría yo calificar de irrazonables la aprobarían como el primer paso de una reglamentación general de las horas de trabajo. Si en este último aspecto estaría sujeto a que se dijera que no mide a todos con la misma vara, es cuestión que creo innecesario discutir.''

La opinión de la mayoría, en que se funda el apelado, no es hoy la ley. Véase *Bosley* v. *McLaughlin,* supra.

En 3 McQuillin sobre Corporaciones Municipales, pág. 398, hallamos lo siguiente:

''Sección 1062.— . . . Las ordenanzas que prescriben las horas en que se abrirán y cerrarán determinadas clases de negocios, aprobadas de buena fe y que son razonables, no discriminatorias (por contener una clasificación natural y lógica) están de acuerdo con la ley y con la política pública del estado, y que emanan de una delegación suficiente de poderes, son válidas y constitucionales y pueden ponerse en vigor.''

En el caso de *Soon Hing* v. *Crowley,* 113 U. S. 703, la Corte Suprema de los Estados Unidos dijo (bastardillas nuestras):

''No tiene peso alguno la objeción de que se hace un discrimen injustificado contra las personas que se dedican al negocio de lavanderías (*laundry*), porque a otras personas que se dedican a otras clases de negocios no se les exija que dejen de trabajar durante las mismas horas de la noche. Tal vez en los negocios de otras personas no haya riesgos de clase alguna; por lo menos ni con mucho como en aquéllos en que el fuego es necesario para su operación. Las reglamentaciones específicas para una clase de negocios, que pueden ser necesarias para la protección del público, nunca pueden servir de base a quejas fundamentales, por no imponerse restricciones similares a otros negocios de distinta índole. *Las discriminaciones que están sujetas a censuras son aquéllas en que personas que se dedican al mismo negocio están sujetas a distintas restricciones, o se les conceden distintos privilegios bajo idénticas condiciones.*''

En el caso de *El Pueblo* v. *Coto,* 24 D.P.R. 381, 383, hallamos lo siguiente:

". . . Las condiciones de vida, la índole de los negocios, la clase de industrias no son las mismas en todas las municipalidades que integran el territorio de Puerto Rico. De ahí el motivo de conferir ciertos poderes a los gobiernos locales para prescribir medidas de orden público de acuerdo con las necesidades de cada pueblo o ciudad."

En el de *El Pueblo* v. *García & García,* supra, este tribunal dijo:

". . . El estatuto según ha sido enmendado prescribe que estarán cerrados los establecimientos durante todo el día del domingo y desde las 6 p. m., en todos los días laborables; en otras palabras, no es el propósito directo del estatuto la limitación de las horas de trabajo, sino el regular los períodos de descanso o suspensión del trabajo durante toda la semana."

Prácticamente la única diferencia existente entre el caso de *El Pueblo* v. *García & García* y el presente, es que en el primero se trataba de una tienda de provisiones mientras que aquí se trata de una farmacia.

Si las condiciones existentes justifican o no el ejercicio del poder de policía es principalmente una cuestión para el poder legislativo y la sentencia de la corte de distrito no debió haber sustituído el criterio de la Asamblea Municipal en el presente caso, a menos que la ordenanza en cuestión fuera claramente arbitraria y por ende aprobada sin justificación o excusa. A nuestro juicio no es ése el caso.

*La sentencia apelada debe ser revocada y declararse sin lugar la demanda.*