EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAFAEL TORRUELLA CORTADA, acusado y apelante.

Núm. 10441.—*Sometido:* Junio 7, 1944. *Resuelto:* Julio 10, 1944.

*Rafael Hernández Matos, abogado del apelante; R. A. Gómez, Fiscal del Tribunal Supremo y Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

La Corte de Distrito de Ponce, en grado apelativo, declaró culpable a Rafael Torruella Cortada de una infracción a la Ley núm. 17 de 1931, en relación con el artículo 36 del Código Penal, consistente, según la denuncia en que "ilegal y voluntariamente, actuando como Administrador del Muelle Municipal de Ponce, creado a virtud de una ordenanza o franquicia otorgada por el Consejo Ejecutivo de Puerto Rico al Gobierno Municipal de Ponce, y en representación de la Junta de Gobierno del referido muelle municipal de Ponce, quien es el patrono de los obreros cuyos servicios utiliza, allí y entonces, ayudó a descontar y descontó el diez por ciento (10%), de los salarios devengados por los obreros, para ser pagado a otra persona."

Sentenciado a pagar una multa de $50 ó en su defecto a sufrir un día de cárcel por cada dólar que dejare de satisfacer, el acusado entabló el presente recurso en el que alega que la corte inferior erró "al dictar sentencia en este caso condenando al acusado, porque no se probó al acusado los hechos que se le imputan en la denuncia."

Las secciones 1, 5, 6 y 7 de la Ley núm. 17 "Para Reglamentar el Contrato de Trabajo, garantizar el salario del obrero, imponer ciertas penalidades por la violación de la misma, y para otros fines", aprobada el 17 de abril de 1931([1]) disponen lo siguiente:

([1]) En la "Legislación Social de Puerto Rico" publicada por el Departamento del Trabajo, al transcribirse esta Ley se hace el siguiente comentario:

"El texto de esta ley es sustancialmente idéntico al de la Ley No. 91, aprobada en 1917 y promulgada por el Secretario Ejecutivo de Puerto Rico el 31 de marzo de 1919 en virtud de una decisión dictada por el Tribunal Supremo de Puerto Rico en el caso del *Municipio de Quebradillas v. Secretario Ejecutivo* (27 D.P.R. 147). La Ley No. 91 fué posteriormente declarada nula por la Corte de Circuito de Apelaciones de Estados Unidos para el Primer Circuito en el caso

"Sección 1.—En todo contrato celebrado con obreros se pagarán los salarios de éstos, exclusivamente en moneda legal de Estados Unidos de América y si por convenio especial, por costumbre o por cualquier otro motivo percibiere, antes de la fecha regular del pago de su salario, un anticipo en metálico, será legal que el patrono descuente dicho anticipo. Si en un contrato de trabajo celebrado se estipulare que todo o parte de los salarios, se pagasen en otra forma que en metálico, será nulo tal contrato en todo lo referente a la promesa o compromiso de que se paguen los salarios en otra forma que en moneda legal de Estados Unidos de América.

"

"Sección 5.—En el caso de que el patrono o su apoderado haga un anticipo en moneda legal de los Estados Unidos de América al obrero, tendrá derecho a descontar esta suma del salario de éste. Sin embargo, ninguna retención de salarios podrá exceder del total de la suma adelantada. Ningún patrono podrá descontar por ningún motivo parte del salario que devenguen los obreros para ser pagado a otras personas, salvo en los casos previstos en esta sección.

"Sección 6.—Se entiende por patrono, a los efectos de esta Ley, al que utiliza o se aprovecha del trabajo de un obrero, mediante el pago de un salario. Se entiende por obrero al que percibe el jornal o salario por su trabajo.

"Sección 7.—La infracción a cualquiera de las disposiciones de la presente Ley, constituirá un delito menos grave (*misdemeanor*); y la reincidencia en la infracción de cualquiera de sus disposiciones se castigará con una pena mínima de cincuenta (50) dólares de multa o treinta (30) días de cárcel." (²)

---

de *Puerto Rico Telephone Co.* v. *People of Puerto Rico* (47 Fed. 2d. 484). En 1931 la ley fué reenactada en la forma que aparece en esta compilación, sin otras alternaciones que la enmienda del título, la eliminación de la sección 5 y una nueva numeración del articulado.

"Es por esta razón que anotamos la jurisprudencia sentada por nuestro Supremo Tribunal de Justicia con respecto a la Ley No. 91 como de estricta aplicación a la Ley No. 17 de 1931.

(²) Al interpretar las secciones 1 y 6 de la Ley de 1919, idénticas a las secciones 1 y 5 de la Ley de 1931, esta Corte, en el caso de *El Pueblo* v. *P. R. American Tobacco Co.*, 30 D.P.R. 796, 7, dijo:

"Claramente se deduce de la lectura de la ley que su propósito principal fué garantizar el salario del obrero evitando cualquier *combinación* que pudiera mermarlo, y así, en su sección primera, dispone que dicho salario deberá pagarse exclusivamente en moneda legal, pudiendo sólo descontarse los anticipos en metálico que se hubieren hecho y siendo nula cualquier estipulación que pueda acordarse en relación con el pago en cualquier otra forma que no sea en dinero.

Sostiene el apelante que no siendo él el patrono de los obreros que trabajaban en el Muelle de Ponce, ya que él actuaba sólo como Administrador del Muelle, para que pudiera hacérsele responsable como mandatario o agente de la Junta Administrativa del Muelle de Ponce,(³) que era el verdadero patrono, debió probarse que existía un acuerdo de dicha Junta autorizando u ordenando los descuentos en los salarios de los obreros. Esta cuestión carece de méritos.

La prueba demostró, más allá de toda duda razonable, que el apelante como Administrador del Muelle dió órdenes al pagador Sr. Sanes, para que descontara el 10 por ciento de los salarios de los obreros; que aquellos obreros que se oponían al descuento eran despedidos y no se les daba más trabajo; que al actuar en esta forma el apelante hacía constar que no estaba autorizado a darle trabajo a quien no pagaba

---

"En la sección sexta vuelve el legislador sobre la cuestión de los anticipos que se hagan al obrero y de modo terminante prescribe que: 'Ningún patrono podrá descontar por ningún motivo parte del salario que devenguen los obreros para ser pagada a otras personas, salvo en los casos previstos en esta sección.' La prohibición es absoluta. Sólo cabe descontar cuando se ha hecho un anticipo al obrero. Si se descuenta *en cualquier otra forma o por cualquier otro motivo*, se incurre en la infracción de la ley que está castigada como delito menos grave por la sección octava de la misma. El pago debe ser hecho al obrero y con él liquidarse el anticipo si se le hizo alguno. No se puede descontar para pagar a otras personas, no importa lo bueno de los motivos que se tengan para ello." y a la página 801:

". . . Cada trabajador es dueño de y debe recibir todo lo que gana sin estar sujeto a extrañas presiones que lo obliguen a ceder parte de su jornal involuntariamente, y para que este propósito pudiera cumplirse y la ley no resultara ilusoria, *la prohibición impuesta por la misma tenía que ser como fué general, absoluta*. El pago debe hacerse al obrero y con él liquidarse el descuento de lo que en metálico se le hubiere adelantado. Si el trabajador por su propio acuerdo, a virtud de un estudio reflexivo de los bienes que de ello podría derivar o de las buenas obras que para con sus compañeros con ello podrían realizarse, quiere desprenderse de parte del producto de su trabajo y entregarlo a determinada persona, asociación o unión, no hay poder alguno que se lo impida. Pero debe hacerlo él personalmente. Ese es el estado actual de nuestra legislación sobre la materia." (Bastardillas nuestras.)

(³) Los poderes de esta Junta están contenidos en la sección 9 de la franquicia concedida por el Consejo Ejecutivo al Municipio de Ponce para construir un muelle y la cual hemos transcrito íntegra en la opinión en el caso de *Lloréns v. Junta Administrativa del Muelle de Ponce*, pág. 940 ante.

el 10 por ciento que se le descontaba. Después de haber sido convicto el apelante en la corte municipal, se planteó ante la Junta Administrativa del Muelle por uno de sus miembros, Sr. Castro, Jr., si procedía que se suspendiera de empleo y sueldo al apelante. Del acta de la sesión de la Junta celebrada el 23 de mayo de 1940, aparece que ocurrió lo siguiente:

"El asunto es ampliamente debatido, participando en la discusión del mismo todos los miembros de la Junta, después de lo cual se acordó por unanimidad dejar el asunto pendiente de consideración ulterior, sujeto al curso que este caso tome en lo futuro, por estar *sub-judice*.

"Cuando la Junta se disponía a suspender la sesión, el Superintendente, Sr. Torruellas Cortada solicitó ser oído y explicó que la sentencia dictada en contra suya por el Juez Bartolomei era injusta y esperaba así demostrarlo en la corte de distrito en donde tenía la seguridad de que sería absuelto. Siguió explicando el Sr. Torruellas que era cierto que él había ordenado el descuento del 10 por ciento a los trabajadores, pero que ello se debía a que había recibido instrucciones en ese sentido de la Junta Administrativa que regía para la fecha en que se hicieron los descuentos.

"La Junta se dió por enterada y tomó conocimiento de las manifestaciones del Superintendente, después de lo cual dió por terminada la sesión."

Del Acta de la sesión de la Junta celebrada el 27 de mayo de 1940, aparece que al aprobarse el acta anterior se hizo constar lo siguiente:

"1.—Se aclara el párrafo final del acta del día 23 de mayo de 1940 en lo que se refiere a las manifestaciones del Sr. Torruella Cortada en relación con el descuento del 10 por ciento a los trabajadores, y se hace constar que dichas manifestaciones no fueron tomadas taquigráficamente ni fueron entregadas a la Junta manuscritas por el Sr. Torruella Cortada."

No obstante la negación absoluta que hizo el apelante al declarar en su propia defensa al efecto de que durante los ocho años que desempeñó el cargo de Administrador del Muelle de Ponce nunca oyó siquiera hablar de que a los obreros se les descontara el 10 por ciento de sus salarios, él

mismo presentó como prueba una carta(⁴) que le fué dirigida en septiembre 12 de 1938 por el Presidente de la Unión de Trabajadores de Muelles Núm. 18, Playa de Ponce, y la cual indica que el apelante tenía conocimiento no sólo del descuento de 10 por ciento sino de los fines políticos para los cuales se hacía.

Se probó, además, que como consecuencia del descuento del 10 por ciento que se hacía en sus salarios, los obreros del muelle se declararon en huelga, teniendo que intervenir para solucionarla un comité de mediación. Toda la prueba demostró que los descuentos se hacían por el pagador siguiendo instrucciones del apelante y que cuando los obreros comparecían ante él para protestar les decía que si no estaban conformes no se les daría más trabajo, como en realidad se hizo con muchos obreros, al extremo de que para conseguir trabajo de nuevo daban un nombre distinto al suyo propio. La prueba en este caso demuestra que la situación que prevalecía en el Muelle de Ponce en relación con el descuento del 10 por ciento en los salarios de los obreros se debía a la intervención de la política partidista en la administración del muelle bajo la dirección del apelante.

(⁴) "Playa de Ponce, P. R.—Septiembre 12, 1938. Sr. Rafael Torruellas Cortada, Supt. Muelle Municipal, Ponce, P. R.

"Muy señor mío: Según reunión citada por el Sr. José Tormos Diego, que se llevó a cabo en la oficina del Muelle Municipal de Ponce con los representantes de la Unión No. 18, y donde se discutió el descuento del 10 por ciento, el señor Alcalde de una manera drástica se manifestó que los trabajadores tenían que dar el 10 por ciento obligatorio o de lo contrario no trabajarían más en ese departamento. A esto manifestó el Sr. Vicente Torres que como fué acuerdo de darle el 2 y medio por ciento a la Unión del 10 por ciento que se descontaba a los trabajadores y esto se hizo público allá en el mes de diciembre cuando se discutían los convenios.

"Nosotros estábamos dispuestos a darle el siete y medio por ciento al *partido político* para la amortización de su deuda, pero como no fué aceptado por el Sr. Tormos Diego porque sus aspiraciones eran que los trabajadores tenían que dar el 10 por ciento completo para la política.

"Estos son los motivos de que los trabajadores reunidos en asamblea acordaron definitivamente no permitir más descuento del 10 por ciento. Nosotros hacemos responsable al Sr. José Tormos Diego de todo lo que ha sucedido por su manera drástica para con los trabajadores. Atentamente, (Fdo.) Juan V. Morales, Presidente." (Bastardillas nuestras.).

No obstante estos hechos probados, sostiene el apelante que no habiéndose probado que existiera un acuerdo oficial de la Junta, que constara en sus actas, ordenándole a él hacer los descuentos, él podría ser culpable de cualquier otro delito pero no de una violación a la Ley núm. 17 de 1931. Pretender que un organismo oficial adopte un acuerdo de esa naturaleza y lo haga constar en sus actas, es absurdo. No debe pretenderse que en esa forma se haga constar una actuación que implica la violación de una ley.

Arguye, además, el apelante que las palabras contenidas en la sección 5, supra: "Ningún patrono podrá descontar por ningún motivo parte del salario que devenguen los obreros para ser pagados a otras personas, salvo en los casos previstos en esta sección", leídas conjuntamente con la definición de la palabra "patrono" consignada en la sección 6, demuestran que la prohibición va dirigida únicamente contra el patrono (en este caso la Junta Administrativa del Muelle Municipal de Ponce) y no contra sus empleados o subalternos. Somos de opinión que esta interpretación restringida y limitada no está justificada a la luz de la intención evidente de nuestra Legislatura al aprobar dicho estatuto.

Si se analiza detenidamente la sección 5 de la ley, se verá que dispone que cuando el patrono o *su apoderado* haga un anticipo en moneda legal al obrero, tendrá derecho (o sea, el patrono o su apoderado tendrá derecho) a descontar dicho anticipo del salario del obrero. Luego, en la tercera oración se dice que "salvo en los casos provistos en esta sección" o sea, salvo en el caso de que se haya hecho el mencionado anticipo por el patrono o su *apoderado,* no podrá el patrono descontar por ningún motivo parte del salario que devenguen los obreros para ser pagados a otras personas. Para que la primera oración pueda ser consistente con la tercera, no tenemos duda de que debemos interpretar la palabra "patrono" usada en dicha tercera oración como "patrono o su apoderado". La definición que se hace de la palabra "pa-

trono" en la sección 6 no significa que tanto éste como su apoderado no sean responsables de la violación de la ley de
acuerdo con la sección 7, supra.

. En el caso de *U. S.* v. *Laudani,* resuelto por la Corte Suprema de los Estados Unidos en enero 3 de 1944, estaba envuelta la interpretación de un estatuto que prohibía que se
indujera a un trabajador en una obra federal a dar cualquier
parte de la compensación a que tenía derecho bajo su contrato de trabajo mediante fuerza, intimidación, amenaza de
despedirlo de su empleo o en cualquier otra forma. El acusado alegó que la ley únicamente era aplicable a los patronos
y que siendo él un capataz y no habiéndose alegado que actuó
como agente del patrono, la acusación no aducía hechos suficientes. La corte de distrito resolvió que la ley era aplicable a
un capataz y un jurado condenó al acusado. En apelación la
corte de circuito revocó la sentencia. Empero, por *certiorari*
concedido, la Corte Suprema Nacional a su vez revocó a la
de Circuito, diciendo:

"Creemos que la rendición bajo coacción de salarios por los empleados a instancias del capataz de la compañía que tenía autoridad
de su patrono para emplearlos y despedirlos, no puede decirse que
no tenga relación con o efecto en sus contratos de empleo, especialmente cuando, como se alega, la rendición de los salarios fué inducida por la amenaza expresa del capataz de despedir a todos los empleados que no accedieran a su exigencia. El llevar a efecto tal
amenaza contra los empleados que se negaron a pagar hubiera inmediata y completamente terminado sus contratos. No encontramos
nada en la ley que sugiera que, bajo estas circunstancias, deba sostenerse que un capataz no viola sus preceptos meramente por el hecho de que él no esté en aquella relación con los empleados que la
corte de circuito caracterizó como "relación contractual" (*privity
of contract*)."

"El propósito de la ley bajo consideración es extender protección no sólo a la forma legal de los contratos de trabajo sino a
los derechos substantivos de los trabajadores para que reciban de
hecho el beneficio de la escala de salarios que el Congreso ha provisto
para ellos. El mal que se trató de evitar fué la privación injusta
de la compensación completa del trabajo. . . "

La Corte Suprema de los Estados Unidos en el caso de *United States* v. *Raynor,* 302 U.S. 540, al exponer el alcance de la regla sobre interpretación estricta de estatutos penales, dijo:

"No olvidamos la regla saludable que requiere una interpretación escrita de estatutos penales. Ninguna regla de interpretación, sin embargo, requiere que un estatuto penal sea restringido y tergiversado (*distorted*) con el fin de excluir una conducta que la intención legislativa claramente demuestra está incluída en su alcance. Tampoco requiere ninguna regla que a la ley se le dé el 'significado más limitado' (narrowest meaning)." [5]

No pudo ser la intención de la Legislatura conceder inmunidad a una persona como el apelante que, investido de autoridad aparente, o de autoridad real, como él declaró ante la Junta, para actuar a nombre de su patrono, realizó el acto delictivo más eficazmente que lo podía realizar su patrono, ya que la Junta, como tal, no era la que intervenía directamente con los obreros y el pago de sus salarios. De acuerdo con la prueba en este caso, desde luego, tan responsable era la Junta como el apelante y ambos pudieron haber sido denunciados. Bajo los hechos probados, relevar al apoderado de responsabilidad equivaldría a quitarle al estatuto gran parte de su poder coercitivo, pues éste podría ser evadido por medio de la fácil estratagema de dar órdenes secretas al apoderado que actúa, y desmentir y negar públicamente tal autoridad. No debemos hacer ineficaz la protección contenida en la sección 5, supra, en favor de una regla general cuya aplicación en este caso no puede justificarse.

*Debe confirmarse la sentencia apelada.*

---

(5) Véase al mismo efecto el caso de *United States* v. *Corbett,* 215 U. S. 233, 242, del cual hemos citado en el de *Ex parte, Francisco Mercado,* resuelto ante pág. 913.